Your Honor, this case concerns Spencer Salcedo's convictions for two counts of attempting to transfer obscene material to fictional minors. Our contention on appeal is that those convictions should be reversed for two independent reasons. First, because digital penis images like the one at issue in this case do not depict sexual conduct in a way that is criminally obscene. And second, because even if this particular image is obscene, the evidence did not demonstrate that Mr. Salcedo specifically intended to transfer it to the fictional minors when he sent a text message to the undercover detective he believed to be their adult mother. Now before I get to my first point, I would like to point out two things, points of emphasis as to the obscenity issue. The first is that by using the term obscene, Congress specifically limited Section 1470 to material that is obscene under the three part test in Miller. And we know that material is only obscene under Miller if it is obscene as to adults. And what that means, practically speaking here, is that the government can only prevail if this court agrees that the material at issue here would be obscene even as to consenting adults. The jury was properly instructed and it did find obscene and the district court denied your Rule 29 motion. But in this unusual area of law, is it conclusively decided that we give no deference to either of those separate determinations? Judge Higginson, it has not been conclusively decided by the Supreme Court whether you give no deference. I would certainly suggest that the indication that I receive and that Justice Brennan in his concurring opinion in Jenkins v. Georgia received is that it's almost a de novo review. Almost. I mean, you do give some deference because the jurors are members of the relevant community. And we aren't. That's true. But as Justice Stevens recognized in his dissenting opinion in Smith v. United States in 1977, the thing about the community standard is that we are never going to it's never going to be disclosed in the record what standard the jurors were actually applying, what what what actual community standard was applied in the jury room. So it is particularly important in these situations. And the Supreme Court has made that. How are they? How are they instructed? Your Honor, the jury was instructed, the jury was given the instruction from, I believe it is 18 U.S.C. 1462, the transporting obscenity in the mail statute. There is no specific Fifth Circuit pattern instruction for this statute. Of course, you don't necessarily need a pattern instruction to get one. Maybe it's gone that far. But what determination, if any, did the jury explicitly make about obscenity or did it make any? It didn't make any, Your Honor. Did they get any instruction about that? Yes, Your Honor. They were instructed that the in order to determine whether the material here is obscene, you have to decide whether or not it meets all three of the prongs under Miller. First, that was what was the jury told about that? The jury was just given a blanket, you know, the pattern instruction that this court has set forth as to the obscenity prongs. And so as to the prong that we're challenging here, which is the second prong, it was simply told that you have to apply the contemporary standards of an average adult to determine if this is patently offensive, hardcore sexual conduct. And that's all that the jury was told. And so it is a it is a very vague instruction for the jurors to apply. And there's a particular danger in this specific statute because it is there's a bit of cognitive dissonance that's going on. We have a statute that says it's illegal to transfer obscene material to a minor. The material has to be obscene as to an adult. But you do have the jury being told that that this is relevant to the minor. And so there is that possibility that the jury might misinterpret the instruction. But we're not here challenging the instruction, your honors. We're simply asking this court to do what the Supreme Court has told federal courts to do in this unique area of constitutional law. And that's make a independent determination of the constitutional fact of obscenity. No court has said that a digital photo of an erect penis isn't per se. Is your position that it never would qualify as patently offensive? No, your honor. Were you saying this photo looked at was sort of less lascivious? Yes. And just to be clear, we're not asking this court to pronounce all pictures of the male erection to be per se constitutionally protected. One could, of course, imagine scenarios where genitals are actually depicted in a way that is far more patently offensive than the still image that's at issue in this case. It's untouched. It's not in the context. It's not being displayed in reference to any type of actual sexual activity. There's no implication that it was just engaged in sexual. But you accept that this is the route we have to go down. We've got to look at it inside the four corners with all these features. Is it threatening in any way? Is it occupying frontally the photo? That's that's what circuit courts have to do. I do. I think that is exactly what the Supreme Court said. And I mean, it's far better. Why is our huge decision that was unpublished, but it did reference that a male penis was obscene? It was a statement of the courts. That's true. But that issue wasn't challenged in that case. And so the governor brief went into it into the lost factors, even, frankly, a more depth than this. It may well have, your honor. But the fact of the matter is that the defendant in that case didn't raise an obscenity challenge. It didn't challenge the basis for the I believe those. Well, it challenged the enhancement which was built around obscenity. So it struck me that this issue, I agree, it wasn't great. It wasn't wonderfully engaged and it's unpublished. Right. And I would think that I think that the difference is, is that in this case, we've raised an argument that is different, that courts haven't had to struggle with before. And that is that if you look at the anecdotal evidence of the contemporary society, societal views, contemporary society just does not understand this conduct to be the type of hard core, patently offensive sexual conduct. Once you say, look at the anecdotal evidence, are you backing us into I think it's the Ninth Circuit? Is it Kilbourn? So that would walk us into a split, right? Whether we look at national standards to assess Corpus Christi standards, are you urging us to do that? Not at all, Judge Higginson, I want to be very clear about this. We are not asking this court to apply a national community standard. We we recognize that this court has never done so. And we're not asking you to. What we what we have done is point to what I think is the overwhelming evidence that there is a national consensus as to contemporary community understanding of images that are like the one issue in this case. But all we're saying is there's no there's nothing in this evidence to suggest or in this record, pardon me, to suggest that the members are the citizens of Texas generally or the citizens of Corpus Christi, Texas specifically deviate from that national consensus. These type of images are transferred in interstate commerce every single day, excuse me, by thousands of Americans. And that wasn't tested in the district court. That's true, Your Honor, but it's not necessarily just seems a little incongruous for you to be, and maybe correctly, strongly opposing their reference to the actual text descriptions of the photos. And yet at the same time, ask us to look at Tumblr and I know they aren't one in the same, but it would be odd for us to take reference to the anecdotal evidence on the Internet. These photos are pervasive and yet not even acknowledge your client's own highly sort of violent and lewd sort of elaboration. Judge Higginson, I don't think it is at odds. And let me explain why. The text message, the explicit text message conversation that occurred alongside this is not part of the work that this court is looking at or that the government limited its case to with the voluntary bill of particulars. In this case, the jury wasn't asked to decide if the sexually explicit conversation and the picture together qualify as obscenity. They were asked to decide if a picture of an erect penis is obscenity. And so that is what the obscenity issue is limited to. What we're saying is on appeal. It is within this court's purview to take notice of the prevailing view of society. When you made a Rule 29 motion, I think that the court that this was not obscene, right? This particular argument? We did make a Rule 29 motion, Judge Higginson, that did. We challenged the obscenity generally. Right. Well, that's what I'm talking about. What was that motion? What was the argument you made? We did not assert a specific argument. We reserved the right to generally challenge the element of obscenity. And so this is not one of those cases where we fall within Herrera where we've made. But then you say, tell me as best you can exactly what the jury was told, if anything, about obscenity. Judge Higginson, the only thing I can do is point you to the jury, the pattern jury instruction, because that is all the jury was told. Now, the process. Okay. Well, tell me what that said. The pattern jury instruction tells the jury to look to the three prongs of Miller. It says you have to look, you have to decide whether. Well, is that what the jury was told? Yes, sir. And so the Miller instruction went to the jury. It did. Okay. Well, you're back to Judge Higginson. Yes. And just to continue the answer, Judge Higginson, what you're looking at is the, we're asking this court to do its independent constitutional review. And those things are relevant. But on the second prong. Yes, on the second prong. And then the other thing that's relevant, of course, is that Detective Escobar's testimony in this case was entirely consistent with our view. She recognized that this is the type of image you would expect to see in a medical dictionary. It would certainly be the type of image you would be able to get on a law. Wasn't that cut both ways? So the jury heard all that, but it came to its own conclusion. It did, Your Honor. But again, I would point you to Jenkins v. Georgia. The Supreme Court recognized that the Georgia jury decided that the film Carnal Knowledge, starring Anne Margaret, was a obscene movie. And the Supreme Court did an independent constitutional review and said, as a constitutional matter, we cannot find that this is obscene. Now, is it sexually explicit speech? Absolutely. But the First Amendment draws a line between sexually explicit speech, which is protected, and obscenity, which is not. We think that this is. So then we just have to look at the photo, and it's not a medical picture of a male genital. It's arguably one aimed at sort of immorality and sexual threatening, the size of it and how frontal, right? A little hard to say in or out, but we just do. I think that's right. But I, well, I certainly don't necessarily agree with the idea that it is this is a particularly lewd depiction. I think it's in the margins of lewdness when it comes to that type of thing. And we've argued in the brief how unassuming this photograph is. I mean, it really is exact. I mean, Jeff Bezos just came out on the Internet several weeks ago and admitted that he had sent a picture that is absolutely identical to this. There we jumping. For you to say this is an unassuming photo, that is just not a description. I agree with you, Judge Higginson, and I don't mean to to. Maybe the best minute to start is what is in your mind the best circuit level description of what lewd equals? This is an area where the circuit courts have not been particularly clear. The only definition I could find was that third circuit definition that I included in the brief. And so, I mean, I guess Justice Breyer does look at this a little in his dissenting opinion in the second Ashcroft Free Speech Coalition case. So if you wanted some guidance, you could look to that. But at the bottom line is is what we're saying is that there is a broad national consensus that these type of images just are not something that people do not think they're exchanging criminal contraband when they're exchanging these images. And this is an ubiquitous part of dating in culture nowadays. And your honor, just briefly, and I I'm happy to continue with the discussion in rebuttal, but I would like to move to my second issue. And I apologize for taking so long to do so. But our second contention is that even if this image is obscene on a statutory interpretation basis, the evidence demonstrated that Mr. Salcedo transferred it to the person he unquestionably believed to be an adult. And the evidence doesn't support an inference that his intent in doing so was to convey that image to the fictional minor. If he didn't convey, he certainly caused to be conveyed. That's true, your honor. And so I would agree with you that by saying, and well, let me back up, he caused the picture to be shown under the context that we have here. Showing is not the same as conveying. As this court's published opinion in Sealed Appellee versus Sealed Appellant demonstrates, the ordinary meaning of transfer is to convey possession and control. Simply taking a phone and doing this. I thought emails would be considered transfers. And yet you haven't really. I agree. I agree. And so what we have here is the government proved one transfer, the text message. The text message was to the adult. The question then becomes when the adult says, I'm going to show this to the minor. Did you argue entrapment at all? No, your honor. We didn't argue entrapment. But it's honor about a day. He later says, did you show it to him? So here we do defer to the jury. Right here. There would be different. So it's a little hard to say if he later asks her, did you show it to them? That an honor about intent wouldn't. It's not simultaneous with hit the button set. Well, Judge Higginson, I would disagree. The statutory text requires specific intent at the time that the use of facility or the facility of interstate commerce is used. And simply taking once an individual once. Let's put it this way. When I transfer my mom pictures of my golden retriever, which I have been known to do. If she then takes that phone and turns it like this to her co-workers at work, I haven't transferred that image to those people. And she certainly hasn't sent that image again in interstate commerce. And so that is that's kind of the point that we're getting at there is that the intent relates back to the use of interstate commerce. And here there was only one of those. And at that time, Mr. Salcedo intended to transfer it to the adult. Take time for about. Drain. Morning, your honor's John Reid, on behalf of the United States, the district court's judgment in this case should be affirmed because the Supreme Court in Miller set out clearly that the lewd exhibition of the genitals is a plain example of patently offensive conduct. And that's what we have here. Even if you look at this image just on its own in the four corners in what what case federal case anywhere other than Hughes Dick Don published has upheld an absented criminal federal criminally absentee on the basis of a photo of a male. The Rogers case in Seventh Circuit. This case in Guthrie involved now, I have to say they're not identical, OK, because as long as when I look at them, it is an obscenity federal felony conviction premised on a photo of a male. Yes, Rogers in the Seventh Circuit, which is cited in my brief and also Guthrie from from this court just last year. Now, I again, those cases are not identical. I'm being candid. They were found to depict self-touching or masturbation. OK, I really am asking for an exhibition because masturbation, of course, courts are affirming. Right. But in Rogers, the court goes through the image and the associated text messages and it finds that it depicts sexual conduct. And then later on, it sets forth the standard for patent offensiveness. And it says that the jury could find this to be a lewd exhibition of of the genitals. I can't cite you to a case squarely on all fours with this one. OK, because the case I thought that was our big precedent on what's lewd is Ragsdale. And yet Ragsdale, those photos are violent rapes. It just seems like a different world than this photo here. Yes, they are. They're I will grant you those are those are. And yet that's different. So what would you point to from our circuit that found something to be lewd, prosecutable, not protected speech without self-touching? Yeah, without self-touch. Right. No, I understand. And I don't have a case. That worries me when when there's no case, because the government's pretty good at asserting its law. So if there's no case, that means we're really on the edge here. Yeah. But and but as I've as I've pointed out, or as you pointed out, Judge Higginson, I apologize. In the opening, there is no case that goes the other way either and says that it cannot be offensive as a matter of your knowledge. The Department of Justice doesn't have any internal guidelines. None that I'm aware of. And I did look. But I did point out in my in my brief several cases, Hughes being one of them, Barlow also from this circuit. And there are other cases where defendants acted in a very similar manner where he sent images of his erect penis to children and was prosecuted for either state or federal obscenity charges, including Section 1470. Now, as you pointed out, the Miller test was not discussed or challenged. And Mr. House accurately pointed that out as well. But the juries must have been instructed on what it means to be obscene. And the juries came back with guilty verdicts. And I think that's an indication that under our contemporary community standards, the juries didn't didn't find any problem with criminal culpability. Is that conclusive under the First Amendment? I'm sorry, Your Honor. Is that conclusive jury determination? I didn't recall that it was. Is the. Well, OK. So are you asking about this court's independent review? Yeah. Yes. So and I think Judge Higginson asked about that as well. How much deference do you have to give to the jury's verdict? Well, I would point out that this court in Guthrie recognized that the court, I believe this is in Miller or Jenkins, said Jenkins, excuse me. The appellate court should properly step in and overturn a jury's verdict if it is wholly at odds with Miller. For example, if a jury were to find the depiction of a woman's bare midriff to be obscene, that would be an appropriate time for the appellate court to step in and say, you've gone too far. But I think that is an example or suggests to me that there needs to be an extraordinary case or an outlier situation. Well, the court has made it quite clear that nudity alone is not, I mean, nudity and nudity, I assume by that, that genitalia are visible as well. So in and of itself, that's not obscene, you have to have some context to do that. You're correct. You're correct, Your Honor. Nudity alone is not obscene. But remember, we're not looking, we're not trying to decide in this case obscenity, which is the three Miller prongs. We're only focused on the second prong. And can the jury properly find this image to be patently offensive sexual conduct? Right now, nudity, I thought patently offensive conduct also is qualified. It's patently offensive, but the jury, what instruction will they do? So if an innovative jury just says it's patently offensive, that's enough? Well, this court exercises its independent review, but I think you should take into strong consideration the fact that a jury did find it to be so. You're familiar with Judge Goldberg's decision in the Cleek case? The Cleek? Cleek, C-L-I-C-Q-U-E. I am not. 1975 minutes, it's an exquisitely written, and the first five, six paragraphs are how we don't give deference to the jury. That would be too easy, he says. That would lift from our shoulders a difficult, recurring, unpleasant task. We cannot accept it. I thought, I thought the emphasis in our law is absolutely, we don't put the jury verdict on the scales. We've got to confront this because the risk would be suppressing First Amendment speed. Right. But the Supreme Court said it has to be wholly at odds with Miller. And so look at... Remind me where the wholly at odds, I mean, that's law. That's in Jenkins, and it was cited approvingly by this Court in Guthrie, again, from last year, Your Honor. Okay, well, that could be very significant. And I would urge you to look at Guthrie because it is very well written, and it goes into detailed analysis. And it is an unpublished case. I mean, again, you know, being candid. But again, Your Honor, look at Jenkins. Supreme Court, Justice Rehnquist. I ask the same question of opposing counsel. Yes. Is it your position that any photo of an engorged erect penis would qualify, or is this one aggravating in some way? I think this... And what would be a non-lewd erect penis photo? Some type of sketch, maybe, from a model, you know, a study of the male form. But, okay, so you're saying every photo of an erect penis qualifies? Not necessarily. I mean, we'd have to know a little bit more. This one, look... What's so bad about this one compared to other selfies? Exactly. This one, in Ragsdale, this Court looked to the camera angle and the zoomed-in nature. Look at the zoomed-in, up close, the photo is cropped so that the male genitals extend from the bottom of the frame to the top of the frame. The man is slightly reclined. I suggest to you this is not a natural position. His legs are spread. His hand is very close to the genitals, suggesting masturbation. It's not, you know, down at his side or of some kind, you know, as if he was posing to be... This is not a photograph of Michelangelo's dating. This is not mere nudity. Again, Judge Higginbotham, I want to get back to you about mere nudity, because in Jenkins, the Court said the film, Carnal Knowledge, was not patently offensive. But it specifically said there was nudity in the film, but the camera did not focus on the actor's bodies, nor was there an exhibition of the genitals. We have that here. Mr. Saucedo, at page 15 of his brief, concedes this is an exhibition. He takes issue with the lewdness part, but, you know, Black says lewdness is moral impurity or wantonness. In Jenkins, the Supreme Court said, well, it's a public display of sexual conduct for its own sake. The same picture in a medical journal would not be... It would not. And Miller specifically talked about that, Your Honor. It said prurient, offensive depictions of sexual conduct at a minimum require scientific value or some other value. And it said, for example, medical textbooks use graphic images to educate. That, by implication, means those images could be offensive or prurient under the first two prongs, but it's not obscene when you get to the third prong of Miller. So, again, exercising, you know, your independent review, he gives medical textbooks as an example of why it's within the bounds of contemporary standards. But then this idea that there's a social phenomenon of people exchanging text messages... Let me shift gears just a little bit with you. So, in this situation, you set up a sting operation, which is understandable and can be very effective, as we know from reading the press. But what happens here is that, at least it's the two counts of which this man is charged, the suggestion to hand to the children came from the government. And so there's nothing in this record that I saw that suggested that, first off, the suggestion that they have such a photograph came from the government. And then when they sent it to the government, the government then, thinking in legal terms, said, well, when you add two more counts here, we give it to the children. It's okay if I show it to the children. And he says, yes. Was that never an issue at trial? No, no. The defendant did not argue. I think you're asking about the transfer element or the second issue that is raised. And the defendant never argued what it means to be a transfer. He never raised an entrapment defense of any kind. I think the issue could be argued by the judge. I don't know that it was. The jury that he did not intend to deliver this picture to the children were finally stated at the outset. Maybe it's sufficient that after she made the suggestion that he went along with it. But the suggestion here is that the government were attuned to create a criminal element that did not exist. It may not have been out to legal entrapment, but that's what's going on here. I understand. And so my response would be, first of all, the conversation was about Mr. Salcedo arranging a meeting to have sex with these children. And the conversation going back and forth was— The concept, the whole notion of the penis here originated with the government. No. Yeah. I read the transcript. She raised the question about size and so on and so forth, and she took it down that road. Yes, yes, Your Honor. One of the text messages says—she says, can I see a pic? Yeah. Right. Yes, yeah, and that's what you're referring to. But the text message immediately before that says—because in response to him asking what do they know and what has to be taught, she says they want to learn what can you teach them. And then she says, so I can get them ready, and can I see a pic? Now— I thought she asked about size and he answered her. Yes, earlier on, earlier on, she asked about size. Yes. But very plainly, this was a sophisticated agent. She knew exactly what he or she—I guess it was she—knew exactly what she was doing. But that's all pointless. That argument never made blow, and it's not an issue. I don't want to raise it. But it jumps out at you that at least for two counts of this, they had him on one basic count, and they're piling on, but they'll say, why don't you do this, why don't you do this, and then you turn around and charge it, and it gets time for it, too. Yes, I understand. I understand exactly your point, Judge Higginbottom. But this is a good undercover officer who—remember this. After he's arrested, one of his excuses or stories was, I was not interested in the children. I was interested in the kids. Well, be precise when you say— Excuse me. I'm sorry. I was interested in the mother. I was not interested in the children. When you say yes, I agree. He didn't get extra time for these two counts. They were concurrent. They were concurrent, but he's serving a sentence. Yes. Just be precise also. Was an entrapment argument made or not? No. Okay. So if this is all about was there enough evidence for Sienter to support the third and fourth counts— Yes. What's your position on whether Sienter could be supported by his later question, did the girls see the photo? I think that's part of the calculus. He asked, did they see—what did they say about the photo after asking about how are we going to get them ready or what do they know and how much do I have to teach them? And keep in mind that this is a very common tactic by sexual predators. Online predators often send these kinds of materials, obscene and pornographic materials to children in an effort to groom them or desensitize them, right, into believing sexual encounters are the norm and so forth. And so it's very easy to see him asking, well, what did they say, and that being an indication of, well, he meant all along for them to see it. Back on the affinity point. That's what they do. Yeah. In the briefs, you focus a lot on the texts— I do. —relevant to obscenity. It seems to me that once you gave the bill of particulars, said it's only the photo, that's not available to you even if it's an intriguing legal issue. I don't think you have to ignore the text, but I recognize the bill of particulars did limit your focus. And I would point out that we did argue in the closing argument without objection, we did argue that the photo was sent as part of a sexually charged conversation, and that's at page 468 of the record in the government's closing argument. And we also elicited— He was speaking to us earlier. He said it doesn't make something that's not obscene obscene because it ends up with a child. So do you agree with that, that we have to assess obscenity and lewdness as the photo exists? I do agree that you have to assess it from— You don't look at it from the most tolerant view or the most intolerant view. It's what does the average person think under contemporary community standards. In Corpus Christi. The Supreme Court has made it clear that there does not have to be any sort of a geographic determination, but it has made clear that it's the local standard. And so jurors are going to naturally apply their own knowledge from the community whence they come. How do we do that? Corpus Christi. How do we do that? We have to do independent, I think, de novo review. How do we know what that community's standards are? What's the case that helps me with that? Contemporary community standards are discussed in multiple cases, but— No, I know they're discussed. How do we know what that community feels? You have to look at the transcript and see what the evidence presented was. The government does not have to present evidence about the contemporary community standards, but the defendant may offer his own evidence to support his view that the contemporary community standards find this acceptable. He did not do that in this case. Ragsdale said that the jury could even reject unrebutted expert testimony as to what the local community standards are. In that case, they tried to present evidence that you could go down to your local bookstore and buy a magazine with images that were very similar to those at issue, and the jury didn't have to assess that. This is a very difficult thing to sort of articulate. The community standards are not subject to a clear legal rule. It's like the—I hate to say this, but it's like what Justice Stewart said, I know it when I see it, and I understand that that is vague, but that's the best we do. We trust juries to make this determination. You as the court have to use your best judgment looking at the entirety of the case, all of the circumstances, and did the jury come to a reasonable, correct conclusion? Was the evidence sufficient? And that's the way the court has talked about it in the Guthrie case. Did the defense have any affirmative case here? I'm sorry? Did the defense have any affirmative case? At trial? No. No. They did not put out evidence. And so in the Rule 29 motion, I take a little bit issue. I don't think that the argument was preserved as to—he's trying to make a statutory construction sort of argument now as to what it means to transfer someone, and you have to intend that the child have possession and control of the obscenity when the statute is designed to prevent kids from being exposed to obscenity. It's the exposure that causes the harm, not the possession and control, because, again, this is what sexual predators do, and we know that from the case law. There's multiple cases where defendants have been convicted under similar circumstances, as you have pointed out, Hughes, with sending similar images. My time is expiring as I speak. We ask that the judgment be affirmed unless the court has any additional questions. All right. Thank you, Mr. Grady. Thank you. Counsel, you still have time for rebuttals? Thank you, Judge Smith. I appreciate it. I want to begin, if I could, by focusing on Jenkins because I don't agree with my friend Mr. Reed that Jenkins limits the time where we reverse based on an incorrect finding of patent offensiveness only if it's wholly at odds. The court did use that phrase, but then the very next paragraph is, our own viewing of the film satisfies us that carnal knowledge could not be found under the Miller standards to depict sexual conduct in a patently offensive way. Nothing in the movie falls within either of the two examples of hardcore conduct. While the subject matter of the picture is, in a broader sense, sex, there are scenes in which sexual conduct, including ultimate sex acts, is to be understood to be taking place, and these just simply aren't the type of patently offensive conduct that we understand in a constitutional sense. So the Behr midriff quote is in there, but it was not in any way meant to limit the type of No problems. One's the Behr midriff quote. I agree that's sort of the bottom floor. It's as far apart as Ragsdale is from here. But that phrase, wholly at odds, sort of makes me think, well, that makes a little more sense. We can allow the jury verdict in the community to have some weight. But then I look at Clique and Goldberg's opinion. It seems like, no, and he's pointing out Jenkins may supersede that. Is there any scholarship or court authority saying? There's plenty of obscenity scholarship. No, but on this point, whether circuit courts can give weight to a jury that was properly instructed as to the elements of Milla. I can't give you specific authority, Judge Higginson. I wish I could. All I can tell you is that in some cases it seems like the court is giving more deference than it should, and in some cases it doesn't seem like it's giving any deference. What I can tell you is that that wholly at odds quote is part of it. It's quite clear we've said that the court has to give it like an independent judgment as to obscenity. I completely agree with that, Judge Higginbotham. Pardon me. What do we do with it? Independent must mean something other than we accept the jury verdict and that's on its face. It does have to, and just to finish that point on Jenkins, the wholly at odds quote is the court discussing generally, not the evidence in that case. That is not linked in any way to the evidence in that case. That is, it would be wholly at odds for us to do something like this. It's like a hyperbolic statement. But then the court brings the analysis to the case and does its independent review. I agree with you, Judge Higginson, that the lack of cases out there is an indicator. I think generally it's true lack of cases could fall one way or the other, but here I think when you pair it with the overwhelming societal consensus and ongoing debate over what these type of images are and should be and how often they should be transmitted that it weighs in favor of the assumption that prosecutors simply aren't charging this type of conduct as obscenity. Now, I'm not suggesting for this court to take a string out of the government's bow or anything because any time an image like this is going to be transferred to an individual who is a minor or pretending to be a minor, the government will absolutely be able to do exactly what it did here and bring enticement charges. Because simply sending a picture like this to a minor is fantastically overwhelming evidence of an intent to persuade or induce or entice that minor to engage in sexual activity. And Mr. Salcedo will be serving 168 months regardless of what you do as to these issues because of that. But the question here is whether the obscenity charge should have been piled on. And based on this particular picture, we think the answer is no. And again, the government's only answer on erect penis was, well, something that has artistic value or something that's not prurient. But it couldn't give you an example of a case where an erect penis wouldn't be patently offensive. So they are basically reducing the category down to nudity. And that just does not square with our understanding of the internet. Lawful pornographic websites couldn't exist as they do today if simply making available a picture of a male erection could expose an individual or the websites to federal obscenity charges. But that would be the logical extension. You say if we affirm on their theory lawful pornographic websites then risk running afoul of federal felony statutes. I think their counsel would have to talk to them about that. I do. I honestly do. I think that it would be a difficult situation because you don't just have this statute. You have 1460, 1461, 1465, 1466. All of these statutes regulate the interstate transmission of obscenity. And if this is obscenity under Section 1470, it is obscenity under each and every one of those statutes. That is the law, and that is a very troubling implication. And I think this court— Do you agree with him there are no DOJ guidelines on 1470? I'm not aware of any, Your Honor. But I will say the only other case that I know other than Hughes and— That would depend on context because of all these other statutes. Suppose it's one medical hospital sending it to another. That's a transmitting of the same thing. You've got to have some other context. Judge Higginbotham, my time is up, but if you'll permit me, I'd like to answer your question. I do think that's right. But regardless, there have been, as we pointed out in the brief, there have been prosecutions under each and every one of those statutes for e-mails and for websites. And so it really is at issue in this case. And, Your Honors, if you have no further questions, we ask you to reverse those two convictions, and I'll submit the case. Yes, Your Honor. Submission. Thank you. Last case for today.